# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LOCKEY MAISONNEUVE, | Civil Action No. 2:18-CV-13955 |
| Plaintiff, | |
| v. | |
| BENEDICT CAIOLA, | |
| Defendant. | |

---

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER VENUE

---

COOPER, LLC
Ryan J. Cooper (RC 0477)
108 N. Union Ave., Suite 4
Cranford, NJ 07016
(908) 514-8830
ryan@cooperllc.com

OF COUNSEL:

*Attorneys for Plaintiff Lockey Maisonneuve*

Carlos S. Montoya
COOPER, LLC
1635 Market Street, Suite 1600
Philadelphia, PA 19103
(908) 514-8830
carlos@cooperllc.com

Brian P. Egan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@mnat.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**I.   Defendant's Motion Requires An Interpretation of the Investor Agreement to Determine Whether the Forum-Selection Clause is Invalid Pursuant to Public Policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4**

**II.  New York Substantive Law Applies to Invalidate the Investor Agreement's Forum-Selection Clause as Contrary to Public Policy. . . . . . . . . . . . . . . . . . . . . . . 6**

A.  State Substantive Law Applies to Interpret and Construe the Validity of the Forum Selection Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B.  New York Law Is Consistent With New Jersey Law and Has a Strong Public Policy Invalidating Choice of Law and Forum Selection Clauses Where There Is No Reasonable Basis For the Chosen Law and Venue. . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

## Case Law

*Atlantic Marine Construction Co. v. United States District Court*,
    571 U.S. 49 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 10

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)

*Collins v. Mary Kay, Inc.*, 874 F.3d 176 (3d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 10

*Erie Railroad v. Tompkins*, 304 U.S. 64 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Gen. Engineering Corp. v. Martin Marietta Alumina, Inc.*,
    783 F.2d 352, 356 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7

*In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Martinez v. Bloomberg LP*, 740 F. 3d 211 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Northern Leasing Systems, Inc., v. French*, 13 N.Y.S.3d 855. . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Silver v Great Am. Ins. Co.*, 29 NY2d 356, 278 NE2d 619,
    328 NYS2d 398 (N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Scoblink-O'Neill v. Local Fin. Bd.*, No. A-4754-11T4,
    2014 N.J. Super. Unpub. LEXIS 2805 (N.J. App. Div. Dec. 4, 2014) . . . . . . . . . . . . . . . . 3

*U.S. Mdse., Inc. v. L&R Distribs., Inc.*, 122 A.D.3rd 613 (N.Y. App. Div. 2014). . . . . . . . . . . 9

## Statutory & Other Authority

17 U.S.C. § 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17 U.S.C. § 103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17 U.S.C. § 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*N.J. Supreme Court Advisory Committee on Prof. Ethics*
    Opinion 655, 129 N.J.L.J. 108 (Dec. 9, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Pursuant to the Court's January 17, 2019 Order, Plaintiff Lockey Maisonneuve, by and through the undersigned counsel, hereby submits this Supplemental Memorandum of Law in Opposition to Defendant Benedict Caiola's Motion to Dismiss or in the Alternative Transfer.

## PRELIMINARY STATEMENT

The current motion before the Court cannot be removed from the entire context of this controversy. Plaintiff Lockey Maisonneuve and Defendant Benedict Caiola entered into an Investor Agreement wherein Caiola invested in bringing Maisonneuve's life story to market in exchange for a portion of the proceeds. Caiola instead misappropriated funds from the Project (and, effectively, from Maisonneuve who was obligated to repay Caiola). Since Maisonneuve confronted Caiola, he has openly and notoriously boasted that his *modus operandi* will be to litigate in bad faith, i.e., to burden and harass Maisonneuve rather than seek to resolve their competing claims under the Investor Agreement. Transferring this action to New York, a forum that – regardless of its geographic proximity – is completely foreign to the Investor Agreement, is simply another manifestation of that intent.

Caiola is not interested in a good faith resolution of this dispute. Upon discovering Caiola's misappropriation, Maisonneuve requested an accounting of the Project funds. Caiola refused and responded with intimidating threats via clips of *Scarface*. Upon terminating the Investor Agreement, Maisonneuve sought a compromise. Caiola refused, boasting that he would manufacture a *post hoc* co-authorship claim solely to burden Maisonneuve. Upon filing her Complaint to protect her rights in her own life story, Caiola

began harassing the Project's vendors to cease working with Maisonneuve. Upon Maisonneuve adding counts for this tortious interference, Caiola increased his harassment, boasting that he was improperly pursuing litigation solely to "CHANGE YOUR LIFESTYLE," and posting meme's accusing Maisonneuve of betrayal with vile and gratuitously graphic comments.

Caiola perpetuated this strategy in the instant motion with the false assertion that the book was to debut in New York when the evidence demonstrates that the book was to debut in Westfield. Caiola also attempted to bully Maisonneuve by intimidating local businesses into cancelling Maisonneuve's book events. Caiola unlawfully marketed an infringing version of the Book, and then disingenuously claimed that he was not *actually* offering the book for sale because the link was "inactive." Caiola has similarly sought to bully Maisonneuve with false claims of a copyright in the Book's cover art, a claim counsel acknowledged that they could not support when confronted with the Damonza contract.

And, Caiola has now turned to trying to intimidate Maisonneuve's counsel and family. Caiola has served the undersigned with a Rule 11 motion claiming it was unreasonable to believe that Caiola's Facebook post about betrayal and the accompanying vile comment were about Maisonneuve (despite clearly being about Maisonneuve and consistent with his well-documented pattern of bullying behavior). Yesterday, Caiola's counsel wrote Maisonneuve's husband directly – not through the undersigned counsel – about this litigation and accused Mr. Maisonneuve, who is a member of the Cranford Township Committee, of violating the New Jersey Local

Government Ethics Law because of his wife's involvement in this case.[1] These antics are frivolous, but that is not the point. Caiola's goal is to burden and harass Maisonneuve.

The forum-selection clause is not independent of this pattern of bullying. The conduct described is not an aberration or an anomaly. It is the manifestation of Caiola's over-arching *m.o.* to accomplish illegitimately what he cannot legitimately. Caiola chose a forum with no connection to the transaction precisely because he believed it would be a greater burden to Maisonneuve than himself should a dispute arise.

Caiola is not interested in getting to the merits of this case because his assertions and claims are demonstrably false and frivolous. He wants only to pursue a vengeful and illegitimate litigation. The law should not be complicit in this scheme, and Caiola's motion should be denied. As set forth in Maisonneuve's opposition brief and herein, a proper analysis of the Caiola's motion requires this Court to interpret the forum-selection clause to determine its validity under the law of the forum. Because the law of New York and New Jersey share a strong public policy against enforcing forum-selections clauses with no connection to the chosen forum, the clause is invalid and Caiola's motion should be denied.

---

[1] Caiola alleges Mr. Maisonneuve has violated local ethics laws because the undersigned represents Ms. Maisonneuve while also representing the Township of Cranford, where Mr. Maisonneuve is a member of the Township Committee. Such contention was long ago rejected by the New Jersey Supreme Court. *Cf. e.g., N.J. Supreme Court Advisory Committee on Prof. Ethics* Opinion 655, 129 N.J.L.J. 108 (Dec. 9, 1991) (holding that a municipal attorney may concurrently represent a municipal official in matters unrelated to the municipality); *Scoblink-O'Neill v. Local Fin. Bd.*, No. A-4754-11T4, 2014 N.J. Super. Unpub. LEXIS 2805 (N.J. App. Div. Dec. 4, 2014) (finding it "clear beyond question" that there is no conflict).

## ARGUMENT

**I.    Defendant's Motion Requires An Interpretation of the Investor Agreement to Determine Whether the Forum-Selection Clause is Invalid Pursuant to Public Policy.**

The U.S. Supreme Court has laid out in *Atlantic Marine Construction Co. v. United States District Court*, a specific analysis for enforcing contractual forum-selection clauses contingent on the threshold question of whether the forum-selection clause is *valid*. *See,* 571 U.S. 49, 54-55 (noting "there was no dispute that the forum-selection clause was *valid*."); *id.* at 62 ("When the parties have agreed to a *valid* forum-selection clause . . ."); *id.* at 62 n.5 ("Our analysis presupposes a contractually *valid* forum-selection clause."); *id.* at 63 ("The calculus changes, however, when the parties' contract contains a *valid* forum-selection clause."); *id.* ("a *valid* forum-selection clause [should be] given controlling weight in all but the most exceptional cases."); *id.* ("presence of a *valid* forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways."); *id.* at 65 ("The policies motivating our exception to the *Klaxon* rule for §1404(a) transfers, however, do not support an extension to cases where a defendant's motion is premised on enforcement of a *valid* forum-selection clause."); *id.* at 66 n.8 (" . . . the same standards should apply to motions to dismiss for forum non conveniens in cases involving *valid* forum-selection clauses pointing to state or foreign forums."); *id.* ("Such caution is not warranted, however, when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a *valid* forum-selection clause.") (all emphasis added). The Supreme Court stated no fewer than ten times that any analysis of a motion

to enforce a forum-selection clause must be qualified by a determination that the forum-selection clause is valid.

The Court of Appeals for the Third Circuit has expressly held that the validity of a forum-selection clause is dependent on whether the clause violates public policy. A forum selection clause is presumptively valid *unless* the "the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) *that enforcement would violate a strong public policy of the forum*, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983) (emphasis added). *See also In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008) ("A forum-selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong public policy of the forum.")

This is consistent with the Restatement (Second) of Contracts, which contains an entire chapter on invalidating contract terms on public policy grounds. *See, generally,* Rest. (2d) Contracts §§ 178-99 (Chapter 8). The Restatement notes that while "parties may contract as they wish," the law recognizes the principle that "interest in freedom of contract is outweighed by some overriding interest of society." *Id.* Introductory Note to Chapter 8. The decision to "refuse to enforce a promise or other term on grounds of public policy" is "based on a reluctance to aid the promisee rather than on solicitude for the promisor as such." *Id.*

To determine whether a forum-selection clause is valid therefore requires the Court to interpret the entire contract, construe its terms, and apply the construction to the applicable public policy. Construction of a contract, like any text, is a quintessentially interpretive act. *Gen. Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir. 1986). This inexorable relationship between interpretation and validity is also codified in the Restatement (Second) of Contracts. The first Comment to § 200, Interpretation of a Promise or Agreement, states that "[q]uestions of *interpretation* arise in determining whether there *is* a contract," i.e., whether there exists a *valid* contract. Rest. (2d) Contracts § 200 Comment a. Once "[p]roperly interpreted, an agreement may not be enforceable as a contract," i.e. the agreement is invalid. *Id.* at Comment c. As discussed below, once construed and interpreted consistent with New York law and public policy (which does not conflict with New Jersey law), the forum-selection clause is invalid.

**II.   New York Substantive Law Applies to Invalidate the Investor Agreement's Forum-Selection Clause as Contrary to Public Policy.**

    A.   State Substantive Law Applies to Interpret and Construe the Validity of the Forum Selection Clause.

Contract interpretation is inherently a substantive process that should apply state law. *See, Collins v. Mary Kay, Inc.*, 874 F.3d 176, 182 n.4 (2017) (*quoting In re County of Orange*, 784 F.3d 520, 530 (9th Cir. 2015)) ("Rules of contract interpretation are plainly substantive under *Erie[ Railroad v. Tompkins*, 304 U.S. 64 (1938)]") . It is well settled that, in diversity cases, courts should apply state contract law to decide interpretation issues. *See, e.g., Collins,* 874 F.3d at 182; *Gen. Engineering Corp.*, 783 F.2d at 356. Even when there is federal question jurisdiction pursuant to 28 U.S.C. § 1331, however, the interpretation of

commercial contracts is not an area that requires courts to create substantive federal law. *Gen. Engineering Corp.*, 783 F.2d at 357. Here, Plaintiff's eight count complaint revolves around Defendant Caiola's fraud and breach of contract. The Court should apply state substantive law to its interpretation of the forum-selection because the clause has no direct relationship to the two copyright claims, one of which is necessitated solely by Defendant Caiola's admission that he is manufacturing a frivolous claim of co-authorship for the improper purpose of burdening Plaintiff Maisonneuve.[2]

Interpretation of the Investor Agreement, and the forum-selection clause specifically, does not implicate any special federal interest. The Third Circuit recognizes that the "interpretation of forum selection clauses in commercial contracts is not an area of law that ordinarily requires federal courts to create substantive law." *Gen. Engineering Corp.*, 783 F.2d at 357. Federal common law should supplant state common law only in the rare instance that there is "a significant conflict between some federal policy or interest and the use of state law . . . ." *Id.* at 356-57. The exceptions to this are areas where the federal courts are the primary agent in developing the law. The Third Circuit cited as examples admiralty law, an area designated by the Constitution as one exclusively for the federal courts, and the Federal Arbitration Act, which statutorily must be applied to interpretation of all arbitration provisions. *Id.* at 357. Thus, only where there are uniquely

---

[2] A right to co-authorship requires objective evidence of a mutual understanding made at the time of the contribution to the work. *See, e.g., Thomson v. Larson*, 147 F.3d 195, 200 (2nd Cir. 1998). Defendant Caiola's unilateral and subjective understanding apparently arose on June 14, 2018, months after his supposed contribution, when he wrote that he "will explore 'co-author' status" for the improper purpose of burdening Plaintiff Maisonneuve with expensive litigation.

7

federal interests at stake, should a court apply federal common law. *Id. See also Collins*, 874 F.3d at 182 (same).

Here, there is no significant conflict because Congress expressly limited copyright preemption of state law to areas of direct conflict. In Title 17, Congress preempts "all legal or equitable rights that are *equivalent* to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a) (emphasis added). Congress exempted from this preemption, however, all rights or remedies under the common law or state statute that do not come within the subject matter of copyright. 17 U.S.C. § 301(b). Namely, federal copyright law does *not* preempt any common law or statutory right or remedy that is not equivalent to a right in an "in original works of authorship fixed in any tangible medium of expression," 17 U.S.C. § 102, or "compilations and derivative works," 17 U.S.C. § 103.

Interpretation of the forum-selection clause in the Investor Agreement does not directly implicate any restricted area of uniquely federal interest. *See Collins*, 874 F.3d at 182.  While the Investor Agreement is unambiguous that Plaintiff Maisonneuve is the sole copyright holder of the Work, *A Girl Raised By Wolves*, the substance of the agreement is the parties' rights and obligations to bring the book to market and distribute the proceeds. Indeed, Defendant Caiola claims that the Investor Agreement does not even pertain to his copyrights in the Work, which he asserts arise from a subjective unwritten understanding that he arrived at unilaterally after execution of the Investor Agreement. Further, Plaintiff's complaint is premised on Defendant Caiola's contractual promises unrelated to the copyright; six of eight claims are common law contract claims. These are rights expressly exempted from preemption by Title 17. Accordingly, the Court should

8

apply state substantive law to interpreting the forum-selection clause to determine its validity.

B. New York Law Is Consistent With New Jersey Law and Has a Strong Public Policy Invalidating Choice of Law and Forum Selection Clauses Where There Is No Reasonable Basis For the Chosen Law and Venue.

Whether this Court applies New York or New Jersey substantive law, the result is the same, and the forum-selection clause invalid, because "neither the parties nor the agreement has any connection to the [chosen forum]." *U.S. Mdse., Inc. v. L&R Distribs., Inc.*, 122 A.D.3rd 613, 614 (N.Y. App. Div. 2014). In New York, as in New Jersey, forum selection clauses are valid unless they violate public policy, such as when there is no reasonable basis for the chosen forum. The *U.S. Merchandise* court invalidated the forum selection clause because there was no connection between the transaction and Delaware as the chosen forum:

> Specifically, the plaintiff has contended, without contradiction, that neither the parties nor the agreement has any connection to the State of Delaware: none of the parties is located in Delaware, the nondisclosure agreement was not executed in Delaware, and performance of the agreement was not to take place in Delaware.

> Accordingly, the prima facie enforceability and validity of the forum selection clause has been rebutted and, therefore, that clause does not "conclusively establish[ ] a defense to the asserted claims as a matter of law"

*Id.* at 614 (internal citations omitted).

New York similarly rejects parties' attempts to make its courts a home to foreign disputes. In *Northern Leasing Systems, Inc., v. French*, the court noted, "our courts should not be under any compulsion to add to their heavy burdens by accepting jurisdiction of

9

a cause of action *having no substantial nexus with New York.*" 13 N.Y.S.3d 855, 856 (emphasis added; *quoting Silver v Great Am. Ins. Co.*, 29 N.Y.2d 356, 361 (N.Y. 1972)). New York law invalidating forum selection clauses in these circumstances is well settled.

Before the Court can enforce the forum-selection clause, it must first interpret the Investor Agreement to determine whether clause is valid. *Atlantic Marine Construction Co.*, 571 U.S. at 63; *see also Collins*, 874 F.3d at 180-81. To interpret the substantive terms of the Investor Agreement, the Court must look to state substantive law, which will not enforce a forum selection clause where the "chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." *Collins*, 874 F.3d at 184 (citations omitted). Because this litigation is centered in Union County, New Jersey – and has no connection to New York – Defendant cannot establish that there is a *valid* forum-selection clause for this Court to enforce, and his motion should be denied.

## CONCLUSION

Accordingly, for the reasons set forth in Plaintiff Lockey Maisonneuve's opposition brief and herein, Plaintiff Maisonneuve respectfully requests that this Court deny Defendant Benedit Caiola's Motion to Dismiss or in the Alternative to Transfer Venue.

Dated: January 31, 2019

Respectfully submitted,
COOPER, LLC
 /s/Ryan J. Cooper
Ryan J. Cooper
COOPER, LLC
108 N. Union Ave., Suite 4
Cranford, NJ 07016
(908) 514-8830

OF COUNSEL:

ryan@cooperllc.com

Carlos S. Montoya
COOPER, LLC
1635 Market Street, Suite 1600
Philadelphia, PA 19103
(908) 514-8830
carlos@cooperllc.com

*Attorneys for Plaintiff Lockey Maisonneuve*

Brian P. Egan
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@mnat.com

11